# Matter of Roberto Carlos PADILLA RODRIGUEZ, Respondent

*Decided November 23, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  Where the temporary protected status ("TPS") of an alien who was previously present in the United States without being admitted or paroled is terminated, the alien remains inadmissible under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2018), and removal proceedings should not be terminated.

(2)  An alien whose TPS continues to be valid is considered to be "admitted" for purposes of establishing eligibility for adjustment of status only within the jurisdictions of the United States Courts of Appeals for the Sixth, Eighth, and Ninth Circuits.

FOR RESPONDENT:  Pro se

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Kevin Primo Laroza, Assistant Chief Counsel

BEFORE:  Board Panel:  MALPHRUS, Deputy Chief Appellate Immigration Judge; HUNSUCKER, Appellate Immigration Judge; GEMOETS, Temporary Appellate Immigration Judge

HUNSUCKER, Appellate Immigration Judge:

In a decision dated March 8, 2018, an Immigration Judge determined that the respondent is not removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2018), as an alien present in the United States without being admitted or paroled, and she terminated the proceedings.  The Department of Homeland Security ("DHS") has appealed from that decision.  The appeal will be sustained, the proceedings will be reinstated, and the record will be remanded.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of El Salvador who entered the United States in 1999 and was granted temporary protected status ("TPS") on November 25, 2003.  The United States Citizenship and Immigration Services ("USCIS") terminated his TPS on November 5, 2012.

In proceedings before the Immigration Judge, the respondent admitted that he entered the United States without being admitted or paroled, and

he conceded removability under section 212(a)(6)(A)(i) of the Act. The Immigration Judge determined that the respondent is not subject to removal on that charge. Relying on the decision of the United States Court of Appeals for the Ninth Circuit in *Ramirez v. Brown*, 852 F.3d 954 (9th Cir. 2017), she concluded that the USCIS's grant of TPS constituted an "admission," and she declined to sustain the charge of removability. On appeal, the DHS argues that the Immigration Judge erred in terminating the respondent's removal proceedings because TPS does not constitute an admission.

## II. ANALYSIS

Under section 244(a)(1)(A) of the Act, 8 U.S.C. § 1254a(a)(1)(A) (2018), the Attorney General may grant an alien "temporary protected status in the United States and shall not remove the alien from the United States during the period in which such status is in effect." In *Matter of Sosa Ventura*, 25 I&N Dec. 391, 393 (BIA 2010), we concluded that an alien is "protected from execution of a removal order during the time [his or] her TPS" is valid but remains removable if determined to be inadmissible under section 212(a)(6)(A)(i) of the Act.

The respondent's time in TPS does not change his manner of entry or his status as an alien who is present in the United States without admission. As we emphasized in *Matter of Sosa Ventura*, "Congress stated that TPS 'does *not* create an admissions program. It is designed to protect individuals already in the United States and gives no alien any right to come te [sic] the United States.'" *Id.* at 394 (quoting H.R. Rep. No. 101-245, at 13 (1989)). We also clarified that "a grant of TPS does not affect an alien's admissibility or inadmissibility for purposes of the Immigration and Nationality Act generally." *Id.* at 392; *see also Nolasco v. Crockett*, 978 F.3d 955 (5th Cir. 2020) (stating that "TPS does not create a 'fictional legal entry'" (citation omitted)).

TPS only provides a limited waiver of inadmissibility, "the purpose of which is to permit certain aliens . . . to remain in the United States with work authorization, but only for the period of time that TPS is effective." *Matter of Sosa Ventura*, 25 I&N Dec. at 393. When the respondent's TPS was terminated, he was no longer protected from execution of a removal order based on his inadmissibility as an alien who was not admitted to the United States. *See id.* at 394–95 (holding that TPS only allows aliens "to remain in a lawful manner and not be forced to depart the United States during the period that TPS is effective. Congress clearly did not intend for TPS to create a permanent immigration status in the United States."); *see also, e.g.*, *Melendez v. McAleenan*, 928 F.3d 425, 429 (5th Cir. 2019) (holding that the "finite period in which the benefits of TPS will operate makes unreasonable

any argument that such status eliminates the effect of any prior disqualifying acts," such as being in unlawful status, because "TPS does not absolve an alien of all prior unlawful conduct"), *cert. denied*, 140 S. Ct. 561 (2019).

Upon our de novo review, we conclude that the respondent remains inadmissible under section 212(a)(6)(A)(i) of the Act, despite his prior grant of TPS. *See United States v. Orellana*, 405 F.3d 360, 365 (5th Cir. 2005) (stating that an alien registered for TPS "maintains any pre-existing immigration status he previously obtained," but when that status is withdrawn, he "reverts to any immigration status that he maintained or was granted while registered for TPS"); Termination of the Designation of El Salvador for Temporary Protected Status, 83 Fed. Reg. 2654, 2655 (Jan. 18, 2018) (Supplementary Information) (explaining that when a country's TPS designation is terminated, "beneficiaries return to . . . [t]he same immigration status or category that they maintained before TPS"); *see also* 8 C.F.R. § 1003.1(d)(3)(ii) (2020). We therefore hold that the Immigration Judge erred in terminating the respondent's removal proceedings.

The Immigration Judge relied on *Ramirez* in finding that the respondent's previous grant of TPS constituted an "admission" and that he is therefore not inadmissible. That reliance was misplaced. *Ramirez* decided that an alien who entered the United States without inspection and later received TPS was "inspected and admitted" within the meaning of section 245(a) of the Act, 8 U.S.C. § 1255(a) (2012), for purposes of establishing eligibility for adjustment of status. *Ramirez*, 852 F.3d at 964. However, the Ninth Circuit did not reject our decision in *Matter of Sosa Ventura*, noting that we did not "address the statutory interpretation question at issue" in *Ramirez. Id.* at 959.

The *Ramirez* court relied heavily on its reading of the plain language of section 244(f)(4) of the Act.[1] Concluding that "the statutory language is clear," the Ninth Circuit found that the statute "unambiguously treats aliens with TPS as being 'admitted' *for purposes of adjusting status*."[2] *Id.* at 958

---

[1]  Section 244(f) of the Act provides, in relevant part:

> During a period in which an alien is granted temporary protected status under this section—
> . . .
>   (4)  for purposes of adjustment of status under section 245 and change of status under section 248, the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant.

[2]  In *Ramirez*, the Ninth Circuit recognized that its interpretation "does not align with the statutory definition of 'admitted'" under section 101(a)(13)(A) of the Act, 8 U.S.C. § 1101(a)(13)(A) (2018), but it applied "an alternative construction of the term" based on its interpretation of section 244(f)(4) of the Act, and it identified an exception for the

(emphasis added); *see also Flores v. USCIS*, 718 F.3d 548, 553–54 (6th Cir. 2013). We do not agree that the language of section 244(f)(4) is plain and unambiguous with regard to the particular issue in dispute here.

In our view, the alternative analysis of the Administrative Appeals Office ("AAO") of the USCIS in *Matter of H-G-G-*, 27 I&N Dec. 617, 627–28 (AAO 2019), where it assumed the statutory language to be ambiguous, provides the proper interpretation of section 244(f) of the Act. Considering the legislative history of the provision and its meaning within the broader context of section 244 and the Act as a whole, the AAO explained that the best reading of the statute is that Congress intended to protect aliens who maintained a lawful immigration status prior to acquiring TPS from becoming ineligible for adjustment of status if their lawful status expired while they remained in the United States in TPS. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 1000 (9th Cir. 2019) (stating that legislative history may be considered if a statute is ambiguous). Consequently, the AAO disagreed with *Ramirez* and held that a grant of TPS does not constitute an admission, and it does not cure, or otherwise impact, an alien's prior unlawful status.[3] *Matter of H-G-G-*, 27 I&N Dec. at 634 (stating that "it does not follow that having a lawful status results in one's inspection and admission").

Several circuit courts have also disagreed with the Ninth Circuit's interpretation of the term "admission." Thus, the circuits are split on whether

---

exclusive purpose of allowing a class of individuals who maintain valid TPS to establish eligibility for adjustment of status. *Sanchez v. Sec'y U.S. Dep't of Homeland Sec.*, 967 F.3d 242, 249–50 (3d Cir. 2020) (citation omitted) (disagreeing with the Ninth Circuit's approach in *Ramirez*).

The Ninth Circuit has declined to apply its definition of the term "admission" in *Ramirez* outside the TPS context, explaining that this definition was based on "the distinct issue of the relationship" between adjustment of status in section 245 of the Act and the TPS statute at section 244(f). *Enriquez v. Barr*, 969 F.3d 1057, 1061 (9th Cir. 2020) (per curiam). The court also noted that it "'embrace[d] an alternative construction of the term' when the statutory context so dictate[d]." *Id.* at 1059 (first alteration in original) (citations omitted).

[3] We note that, subsequent to the Immigration Judge's decision in this case, the AAO issued *Matter of H-G-G-*, which was appealed to the United States District Court for the District of Minnesota. *Hernandez de Gutierrez v. Barr*, CV 19-2495 (JRT-KMM), 2020 WL 5764281, at *4 (D. Minn. Sept. 28, 2020). Disagreeing with *Matter of H-G-G-*, the court relied on the Ninth Circuit's reasoning in *Ramirez*. District court decisions are generally not binding on the Board. *See Matter of K-S-*, 20 I&N Dec. 715, 718 (BIA 1993); *see also Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (noting that the decisions of a district court judge are not binding precedent). In any case, we find the AAO's analysis in *Matter of H-G-G-* to be more persuasive than that of the district court.

a grant of TPS constitutes an admission for purposes of adjustment of status. *Compare Velasquez v. Barr*, Nos. 19-1148, 19-2130, 2020 WL 6290677, at \*3 (8th Cir. Oct. 27, 2020), *Ramirez*, 852 F.3d at 964, *and Flores*, 718 F.3d at 551–53, *with Sanchez v. Sec'y U.S. Dep't of Homeland Sec.*, 967 F.3d 242, 252 (3d Cir. 2020), *Melendez*, 928 F.3d at 427–29, *and Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1265 (11th Cir. 2011) (per curiam).

The holdings in *Flores* and *Velasquez*, like the Ninth Circuit's holding in *Ramirez*, rely on section 244(f)(4) of the Act to determine that the aliens in those cases were eligible for adjustment of status. These courts clearly held that their interpretations were based on the plain language of the statute, so their decisions remain binding precedent in their respective jurisdictions. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984) (explaining that if the meaning of a statute is plain, both the agency and the courts must give effect to that clear expression of congressional intent). Accordingly, an alien whose TPS continues to be valid is considered to be "admitted" for purposes of establishing eligibility for adjustment of status within the jurisdictions of the Sixth, Eighth, and Ninth Circuits. However, we agree with the circuits holding that a grant of TPS is not an admission, and we conclude that their reasoning should be applied in any circuit that has not addressed that issue.

Eligibility for discretionary relief is clearly separate and distinct from the issue of removability. Moreover, the aliens involved in *Ramirez* and the cases that follow its rationale had maintained valid TPS. Section 244(f) of the Act expressly provides that it only applies "[d]uring a period in which an alien is granted temporary protected status." Thus, even under the Ninth Circuit's approach, an alien is admitted and eligible to adjust status only if his or her TPS is valid at the time of adjustment.

Unlike the alien in *Ramirez*, the respondent is in removal proceedings and no longer has TPS. Furthermore, he is not applying for adjustment of status. Therefore, we conclude that the limited holding of *Ramirez* is inapplicable here, and we decline to extend it in this case. Accordingly, we will sustain the DHS's appeal, vacate the Immigration Judge's decision, and reinstate the respondent's removal proceedings. The record will be remanded to the Immigration Judge for further proceedings. We express no opinion regarding the ultimate outcome of these proceedings.

**ORDER:** The appeal of the Department of Homeland Security is sustained, the decision of the Immigration Judge is vacated, and the removal proceedings are reinstated.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.